**Hyman HUNDERT, et al., Plaintiffs,**

v.

**Matthew W. BIESZCZAT, et al., Defendants.**

No. 80C170.

United States District Court, N. D. Illinois, E. D.

Nov. 20, 1981.

Patrick C. Doody, McCracken & Walsh, Joseph Butler, Crane & NorCross, Chicago, Ill., for plaintiffs.

Stuart Gordon, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs are a group of Cook County real property owners who have launched a somewhat puzzling attack (puzzling at least in federal jurisdictional terms) against the County's real property tax levy system. Defendants (members of the County's Board of Commissioners, the County Clerk and the County Treasurer) have moved to dismiss the Complaint on a number of grounds. For the reasons stated in this memorandum opinion and order defendants' motion is granted.

## Tax Injunction Act

Under the Tax Injunction Act of 1937 (the "Act," 28 U.S.C. § 1341) a district court cannot enjoin the administration of any state tax system "where a plain, speedy and efficient remedy may be had in the courts of such state." Defendants initially moved to dismiss arguing that Illinois' refund procedure satisfies the standards of the Act. This Court's June 22, 1981 memorandum opinion and order denied that motion because the six-year delay in refunds alleged by plaintiffs might not constitute a "speedy and efficient remedy." Contrast *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 520–22, 101 S.Ct. 1221, 1232–33, 67 L.Ed.2d 464 (1981).

■ Both sides have now submitted affidavits on the length of the normal delay experienced in securing a refund. Defendants' affiant asserts the waiting period is two years or less[1] while plaintiffs' affiant asserts the wait is in excess of six years. At the least a factual issue remains,[2] and summary judgment is therefore inappropriate on that score.

## Merits of the Complaint

■ Plaintiffs' Complaint is oddly structured. It charges (¶ 22) the *1978* Cook County tax levy violated an entire series of *state law* requirements, so that the tax rate was higher than it should have been.[3] It purports (¶ 2) to represent the vast army of Cook County real estate owners who have paid their taxes *without* filing a protest challenging the tax rate. It says (¶ 25) that the annual refund has historically amounted to less than $5 for each of hundreds of thousands of members of the class purportedly represented. And it asks (in addition of course to fees for plaintiffs' lawyers) for an accounting and refund of the illegal portion of the 1978 levy.

Plaintiffs make another quantum leap from the tax year 1978 to the indefinite (more accurately the infinite) future. They ask for preliminary and then permanent injunctive relief against every taxing body in Cook County "from illegally levying, extending and collecting the real estate taxes in the County of Cook." Needless to say the counsel fees request would apply here as well.

■ All this is characterized as an action under 42 U.S.C. § 1983 ("Section 1983"). This Court's understanding of the Civil Rights Act of 1871 has always been that plaintiffs must point not only to defendants' actions taken "under color" of state law (obviously satisfied here) but to defendants' violation of a *federal* right (in *Rosewell*, for example, the Fourteenth Amendment's guarantee of equal protection). Plaintiffs have also invoked federal question jurisdiction under 28 U.S.C. § 1331, again without really defining the claimed federal right involved. This Court therefore directed plaintiffs to identify—to particularize—just what federal rights they were seeking to enforce in each instance.

■ In response plaintiffs have called upon the Fourteenth Amendment. They

1. It has since become apparent that defendants mistook plaintiffs' claim as one addressed to taxpayers' *specific* objections rather than to the claimed illegality of the tax rate itself. That error is quite understandable, for plaintiffs' Complaint is scarcely a model of precision.

2. Now that the nature of plaintiffs' attack has been clarified the Court assumes defendants might well agree to the lengthy timetable asserted by plaintiffs. This Court's own knowledge of tax rate refund procedures while a practitioner confirms the kind of delay stated by plaintiffs' affiant.

3. That argument could well be fallacious in whole or in part. Tax rates are simply the quotient derived from dividing the taxing body's total revenue needs by the total assessed valuation of property within their jurisdiction. If the total revenue needs have been properly calculated the tax rate is correct—but it may nonetheless be illegally established under state law for failure to comply with one or more of a whole series of highly technical requirements. In that event the tax rate is not too high—there is simply a shortfall in expected revenue as a result of the required refunds. On the other hand one or more technical errors may in fact have been made in defining total revenue needs, in which case the tax rate itself *is* illegally calculated in state law terms. But in either case the flaw is one under *state* not *federal* law.

say the prescribed state remedy of paying the tax under protest and filing objections to their tax rate denies:

(1) equal protection to taxpayers who do not file objections, because they do not receive funds even though an illegal tax rate is illegal as to everyone—objectors and non-objectors alike; and

(2) due process to taxpayers who are "effectively prohibited" from filing objections because the $15 filing fee (Ill.Rev. Stat. ch. 25, § 27.1) is uneconomic in relation to their small potential refunds of $5 to $15.

In light of that characterization, the absence of any sound federal claim in plaintiffs' allegations becomes obvious.[4]

### Equal Protection

Under the Illinois tax refund system, if the Supreme Court eventually determines that an excessive tax was levied in a given year, all taxpayers who paid taxes under written protest automatically receive appropriate refunds.[5] Plaintiffs argue that it violates the Equal Protection Clause to provide refunds only to those taxpayers who have filed objections, rather than to all taxpayers.

Conventional equal protection analysis first requires a description of the two classes the government is treating differently. Obviously a class consisting of Illinois taxpayers who do not file objections is not a "suspect class" so as to call a more stringent constitutional standard into play. Accordingly the Illinois law would violate the Equal Protection Clause only if there were no rational basis for the distinction it draws. *McGowan v. Maryland*, 366 U.S. 420, 424–25, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961).

But there are obviously a large number of rational reasons that might support providing refunds only to those taxpayers who file objections. For example, were Illinois to undertake a blanket refund to all taxpayers it would be faced with the task of providing a methodology for identifying the proper payees and where to send the vouchers.[6] It would be a permissible legislative judgment that considering the high volume and complexity of recorded land transfers (land trusts and leaseholds for example) and the tax records themselves (which for many reasons often do not contain names that coincide with the party actually paying the taxes), it would be unduly burdensome to obligate the taxing authorities to determine precisely who was currently entitled to the refund. By requiring taxpayers to file an objection, Illinois obviates such problems and simply provides a refund to all those who have provided the necessary information.[7]

That could be one rational basis for the distinction drawn by the Illinois statute. There may be a number of others. Certain-

---

**4.** Two additional allegations in the Complaint merit no more than brief mention. Paragraph 22(*o*) asserts that the tax statutes themselves are unconstitutional and void. But that unsupported and conclusory statement does not state a claim even under the liberal pleading requirement of Fed.R.Civ.P. ("Rule") 8, and plaintiffs have not fleshed it out beyond the two issues just posed in the text. As for the bald use of the term "fraudulent" in Paragraph 26, that complies neither with the liberal provisions of Rule 8 nor with the more stringent specificity requirement of Rule 9(b).

**5.** Such refunds represent the same proportion of each protesting taxpayer's bill that the portion of the rate illegally levied bears to the total rate for the tax year involved. Invariably some small part of the rate runs afoul of one of the hypertechnical requirements of state law. According to the briefs the rate refund tends to run between ½% and 1½% of the total rate.

**6.** Despite the potentials represented by the computer age, the nature of the tax rolls is such that the legislators could contemplate that if an across-the-board refund system were adopted, there could be an enormous amount of outstanding vouchers that would never be presented for payment for any of a host of reasons. Such a system, involving an unknown and unknowable amount of liability to offset against available revenues, would make governmental fiscal planning even more difficult than it already is.

**7.** It is not possible (nor indeed is it wholly relevant) to determine the "real reason" the Illinois General Assembly had in mind when it passed the statute. Illinois statutes have no legislative history of the kind available for federal laws, to that a court must hypothesize possible purposes of a statute by analyzing its terms.

ly plaintiffs have not discharged *their* burden of showing that no rational basis can exist. Under the circumstances this Court cannot rule the Illinois statute violates the Equal Protection Clause.

### Due Process

 Plaintiffs contend that they are deprived of property without due process of law because it is uneconomic to file for a small refund if the filing fee exceeds the amount of the refund. If part of a tax levy is eventually determined to be excessive, plaintiffs' excess tax payment would certainly have been a deprivation of property. However, deprivation alone is not enough—the question remains whether it was without due process of law. That question must be answered in the negative.

After the Illinois Supreme Court determines that part of the tax levy in a particular year was excessive, Cook County provides a proper refund to anyone who has filed an objection accompanied by a $15 filing fee. Plaintiffs' contention that the $15 requirement denies due process is absurd. It would be no different from contending that traffic fines are assessed in violation of due process of law because traffic court is held during the day and it is uneconomic in terms of work hours lost to go to court to challenge a traffic ticket carrying a small fine. Such reactions—though understandable and even legitimate in human terms—do not rise to the level of constitutional violations. Plaintiffs have not shown that the $15 filing fee is anything other than eminently reasonable. Illinois' objection procedure, coupled with its full legal determination of the propriety of the tax levy, clearly comports with due process of law.

### Jurisprudential Considerations

It is perhaps unnecessary to go further, given plaintiffs' failure to ground their claims in federal soil. But note should also be made of the injunctive relief they seek—compelling *state* officials to follow *state* law in the future. In the context of a real estate tax, with all its technicalities and complexities, is that really the role a federal court should play in our system of federalism? If plaintiffs had their way and such an injunction were granted, *this* Court would not be determining whether its own order had been complied with. That decision would necessarily have to await, for each tax year, the resolution of state law questions by the Illinois Supreme Court—years down the road. Because only that final decision is definitive, the state appellate system by definition provides as "plain, speedy and efficient [a] remedy" as can be afforded. This Court, of necessity forced to abide the state result, could not improve the remedy. To state plaintiffs' contention is to disclose its poverty.[8]

### Conclusion

Defendants' motion is granted. Because the Complaint's stated defects cannot be cured, this action is dismissed in its entirety.

---

8. True enough, anyone with the price of the $60 filing fee is privileged to file a lawsuit (or anyone without the price, upon compliance with the requirements of the rules). Actions like this one, however, are plainly lawyer-inspired (or at least lawyer-encouraged). Somehow counsel must reflect a keener sense of their responsibility to the legal system than appears to be reflected here (though the Court recognizes both that it may itself have erred in its decision and that law takes new shape at its frontiers). See Cann, *Frivolous Lawsuits—The Lawyer's Duty To Say "No,"* 52 U.Colo.L.Rev. 367 (1981).