FIELD ENTERPRISES, INC., et
al., Plaintiffs,

v.

William BROGAN, et al., Defendants.

No. 81 C 4331.

United States District Court,
N. D. Illinois, E. D.

Dec. 24, 1981.

John O'Malley, O'Malley & O'Malley, Chicago, Ill., for plaintiffs.

Margarite Primozich, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Seventeen Illinois corporations have sued the officials with primary responsibility for administration of the Illinois Unemployment Compensation Act (the "Act," Ill.Rev. Stat. ch. 48, §§ 300–820). Plaintiffs invoke 42 U.S.C. § 1983 ("Section 1983") by claiming that defendants' failure to review plaintiffs' contribution rates as required by Ill. Rev.Stat. ch. 48, § 579 ("Act § 579") violated plaintiffs' Fourteenth Amendment due process rights. Complaint Count I points to the absence of review as such, while Count II purports to find a separate due process violation in defendants' alleged violation of Social Security Act § 303, 42 U.S.C. § 503, and the Secretary of Labor's implementing regulations, 20 C.F.R. §§ 650.1(c) and 650.-3(a)(2).[1]

█ Illinois Employment Security Administrator Agaliece Miller ("Miller") has moved to dismiss the Complaint under Fed. R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. After that motion was fully briefed the United States Supreme Court decided *Fair Assessment in Real Estate, Inc. v. McNary,* —— U.S. ——, 102 S.Ct. 177, 70 L.Ed.2d —— (1981). For the reasons stated in this memorandum opinion and order, *McNary* (and not the reasons advanced in Miller's motion) compels dismissal of the Complaint. Because its defects are non-

---

1. This latter claim poses obvious and familiar problems as to the non-existence of a private remedy, for the statute speaks only of what the *Secretary of Labor* is to do if he finds that the state agency has failed to comply with the Social Security Act in administering the state law. Even there the Secretary may act only "after reasonable notice and opportunity for hearing to the State agency" (Social Security Act § 303(b)). Plaintiffs' attempted reliance on that Act therefore must frankly be viewed as frivolous, but in any case it stands on no better footing than the Count I claim dealt with in the text of this opinion.

curable, this action is dismissed as to all defendants.

### Federal-State Comity and McNary

McNary was also brought under Section 1983 against state and county officials responsible for tax administration. Plaintiffs there complained that *their* Fourteenth Amendment rights (to both equal protection and due process) had been violated because:

(1) St. Louis County properties with new improvements were assessed at markedly higher rates than those without such improvements; and

(2) property owners who successfully appealed their property assessments were targeted for reassessment the following year.

Justice Rehnquist's opinion for the Court first noted that actions for *injunctions* against the collection of any state tax are prohibited by the Tax Injunction Act, 28 U.S.C. § 1341 (applied at the Court's last term in *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)). Because the *McNary* plaintiffs sought damages rather than an injunction, that statute did not bar their action. Instead the Court concluded that "Our Federalism"—considerations of federal-state comity—required the same result (—— U.S. at ——, 102 S.Ct. at 185–86):

> And damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim. We consider such interference to be contrary to "the scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts."

To set the claims in *McNary* and in this case side by side is to reveal their functional identity: Both are Section 1983 actions in which plaintiff-taxpayers claim that actions

taken by state tax officials violated their due process rights.[2] Absent a meaningful distinction, *McNary* must govern here.

There is of course a difference in the relief prayed for: In *McNary* the plaintiffs sought damages, while here an injunction is sought. Because of the nature of the proposed injunction plaintiffs here (like the *McNary* plaintiffs) are not foreclosed by the literal terms of the Tax Injunction Act:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

But *McNary* teaches that the principles of comity exemplified by the Tax Injunction Act, rather than the finite boundaries of that Act, are controlling. It embraced and applied the same purpose of avoiding disruption to the state tax system caused by litigation in the federal courts (—— U.S. at ——, —— – ——, n.6, 102 S.Ct. at 182 n.6 183–84). It may be that the most directly disruptive litigation would be an injunction against collection of a state tax. However, *McNary* found a damage action posed the same type of danger to the state tax system (—— U.S. at ——, 102 S.Ct. at 184–85):

> Petitioners will not recover damages under § 1983 unless a district court first determines that respondents' administration of the County tax system violated petitioners' constitutional rights. In effect, the district court must first enter a declaratory judgment like that barred in *Great Lakes* [*Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407]. We are convinced that such a determination would be fully as intrusive as the equitable actions that are barred by principles of comity. Moreover, the intrusiveness of such § 1983 actions

---

**2.** True enough *McNary* involved "substantive" due process claims while this case poses a claim for a hearing—"procedural" due process. But that distinction cannot support a difference in result. Similarly, the fact that this case involves an alleged breach of a state statute by state officials has no impact on the propriety of this Court's adjudicating a federal due process claim. Indeed, if anything that fact makes such adjudication less appropriate for reasons stated by this Court in its pre-*McNary* opinion in *Hundert v. Bieszczat*, 526 F.Supp. 1051 (1981).

would be exacerbated by the nonexhaustion doctrine of *Monroe v. Pape* [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492], *supra.* Taxpayers such as petitioners would be able to invoke federal judgments without first permitting the State to rectify any alleged impropriety.

That language really applies a fortiori here. What plaintiffs seek to attain, not as a way station as in *McNary* but directly, is that this "district court first determines that respondents' administration of the [State] tax system violated petitioners' constitutional rights."

One last quote from *McNary* underscores the parallel. It repeated and adopted Justice Brennan's explanation in *Perez v. Ledesma*, 401 U.S. 82, 128–29 n.17, 91 S.Ct. 674, 698–99 n.17, 27 L.Ed.2d 701 (1971) of "the reasons behind federal court deference for state tax administration":

> The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

Again the language of the Court might well have been written for this case. *McNary* counsels a district judge that inquiries of the nature this action would require are to be avoided in the interests of federalism. To do otherwise would be to allow plaintiffs to "hale state officials into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim" (—— U.S. at ——, 102 S.Ct. at 184–85).

One element of the *McNary* rule (like the Tax Injunction Act) is that the federal court may abstain only where the available state remedies are plain, adequate and complete (*id.*). That is necessarily true where as here the gravamen of plaintiffs' claim is defendants' alleged non-compliance with the clear requirements of a state statute. If plaintiffs are right, mandamus will lie in the state courts; if they are wrong, they could not obtain relief either here or there. Indeed resort to the state courts is peculiarly appropriate, because both plaintiffs' due process and statutory claims involve interpretations of state law and its administration.

### Federal-State Comity—Other Jurisprudential Considerations

Just ten days before *McNary* was decided this Court dismissed another action posing similar considerations of Our Federalism (*Hundert v. Bieszczat*, 526 F.Supp. 1051 (1981)). To plagiarize freely from *Hundert*, it is perhaps unnecessary to go farther given plaintiffs' failure to ground their claims in federal soil. But note should also be made of the injunctive relief they seek—compelling *state* officials to follow *state* law in the future. In the context of determining required contributions to a state tax fund, with all its technicalities and complexities, is that really the role a federal court should play in our system of federalism? If plaintiffs had their way and such an injunction were granted, *this* Court could determine that its own order had been complied with only by a continuing oversight of matters best left to the state court system. That prospect is not an appropriate one under Section 1983—barring of course the remote possibility that the state courts would default in according plaintiffs the process due them.

*Conclusion*

For the reasons stated in this memorandum opinion and order, the Complaint and this action are dismissed as to all defendants.